IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>MARIO ALBERT VILLEGAS,<br><br>Defendant/Movant. | Cause No. CR 14-038-BLG-SPW<br>CV 18-130-BLG-SPW<br><br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE<br>OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Villegas's motion to

vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.

## I. Background

On March 20, 2014, an FBI agent submitted a complaint and requested a

warrant for Villegas's arrest based on probable cause to believe he was supplying

methamphetamine to persons in Montana.  Villegas was arrested in Los Angeles on

March 25, 2014. *See* Compl. (Doc. 1).

On April 18, 2014, a grand jury indicted Villegas and eleven other people on

charges of conspiracy to distribute and possess with intent to distribute 500 grams

or more of a mixture or substance containing methamphetamine, a violation of 21

U.S.C. § 846 (Count 1), and possession of the same with intent to distribute, a

violation of 21 U.S.C. §§ 841(a)(1) and 2 (Count 2).  Due to the drug quantity

1

alleged, if convicted on either count, Villegas would face a mandatory minimum sentence of ten years in prison. *See* 21 U.S.C. § 841(b)(1)(A)(viii). Nine more counts were charged against the other defendants. A *Pinkerton* theory[1] was pled as to Count 2, and a forfeiture count was also alleged. *See* Indictment (Doc. 15) at 1–10.

At arraignment in the District of Montana on April 22, 2014, Assistant Federal Defender David Merchant appeared for Villegas. CJA Panel Attorney Daniel Ball was appointed a day later. *See* Minutes (Doc. 45); Orders (Docs. 47, 51).

On August 22, 2014, the grand jury returned a superseding indictment alleging the same two counts against Villegas. *See* Superseding Indictment (Doc. 162) at 3–5. Between August 21, 2014, and Christmas, five defendants pled guilty, and three more moved to change their pleas. *See* Minutes (Docs. 160, 201, 235, 276, 287); Mots. to Change Plea (Docs. 298, 300, 305).

On December 10, 2014, the Court denied motions, filed by Villegas and co-defendant Jason Neel, for a *Franks* hearing.[2] Ruling on their motions to suppress was reserved. *See* Mots. (Docs. 246, 249); Order (Doc. 294).

On December 29, 2014, counsel Ball moved to withdraw as Villegas's

---

[1] *See Pinkerton v. United States*, 326 U.S. 640, 647 (1946).
[2] *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

attorney on the grounds that Villegas had retained counsel. Jack Sands filed a notice of appearance on Villegas's behalf on January 2, 2015. *See* Mot. to Withdraw (Doc. 311); Notice of Appearance (Doc. 314); Order (Doc. 339).

On January 5, 2015, the Court denied Villegas and Neel's motion to suppress. *See* Order (Doc. 328). On the same day, the United States filed a trial brief, noting that both Villegas and Neel had rejected plea offers. *See* U.S. Trial Br. (Doc. 325).

By January 25, 2015, all defendants except Villegas and Neel had pled guilty. On January 26, 2015, Villegas and Neel filed their own trial briefs. *See* Defs. Trial Brs. (Docs. 376, 383). On the same day, the United States filed an Information alleging that Villegas had previously been convicted of a felony drug offense and was therefore subject to a mandatory minimum sentence of 20 years, rather than ten, if convicted on either Count 1 or Count 2. *See* Information (Doc. 380); 21 U.S.C. §§ 841(b)(1)(A), 851(a). The United States also filed an Information against Neel, alleging that he had been convicted of two felony drug offenses. *See* Information (Doc. 379).

On January 30, 2015, the Court set a change of plea hearing for Defendant Neel, *see* Order (Doc. 394), and the parties filed an offer of proof and a plea agreement (Docs. 395, 396). Neel pled guilty the same day. *See* Minutes (Doc. 398).

Villegas's trial commenced on February 2, 2015. Several co-defendants testified against him. On February 5, 2015, the jury convicted Villegas on both counts and found that each offense involved more than 500 grams of a substance containing methamphetamine. *See* Minutes (Docs. 405, 408, 411, 415); Verdict (Doc. 417) at 1–3.

Sentencing was originally set for June 11, 2015, and twice continued. *See* Orders (Docs. 429, 520, 576).

At sentencing on August 6, 2015, the Court found a base offense level of 36. Villegas received three enhancements of two points each for possessing a firearm during the offense, making a credible threat to use violence, and a managing or supervising role in the offense. The total offense level was 42. With a criminal history category of VI, the advisory guideline range was 360 months to life in prison. *See* Statement of Reasons (Doc. 586) at 1 § I(B), III; Presentence Report (Doc. 587) ¶¶ 83–93, 102–04 (superseded at ¶¶ 88, 93); Sentencing Tr. (Doc. 621) at 14:17–17:12. Villegas was sentenced to serve 360 months in prison, to be followed by a ten-year term of supervised release. *See* Judgment (Doc. 585) at 2–3.[3]

Villegas appealed. On June 13, 2017, the Court of Appeals affirmed his

---

[3] Neel received a prison sentence of 600 months. *See* Minutes (Doc. 567); Judgment (Doc. 568) at 2.

conviction and sentence. *See United States v. Villegas*, No. 15-30238 (9th Cir. June 13, 2017) (unpublished mem. disp.) (Doc. 632).  His conviction became final on September 11, 2017.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

On August 13, 2018, Villegas timely filed his motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255.  *See* Mot. § 2255 (Doc. 639) at 6 ¶ C; 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

On November 26, 2018, the Court found appointment of counsel to be in the interest of justice and asked Villegas whether he wished to have counsel appointed.  He responded affirmatively.  The Court appointed counsel on January 8, 2019.  *See* Orders, Villegas Resp. (Docs. 641, 643, 644, 646).  Counsel filed an amended motion on November 14, 2019.  *See* Am. § 2255 Mot. (Doc. 662).  The United States answered and Villegas replied.  *See* Answer (Doc. 670); Reply (Doc. 675).  The parties conducted discovery.  *See* Orders (Docs. 676, 678).

On November 4, 2021, Villegas filed a motion for an evidentiary hearing.  The United States filed a motion for summary judgment.  *See* Mots. for Hearing, Summary Judgment (Docs. 689, 692).  Both motions are now fully briefed.

## II.  Claims

Villegas's amended motion asserts three claims for relief:

1.   Trial counsel provided erroneous advice about the proposed plea offer and the maximum penalties Villegas faced if convicted at trial.

2a.   Trial counsel failed to advise Villegas of the United States' intent to

seek an enhanced penalty based on his prior conviction for a felony drug offenses and failed to ensure the Court complied with appropriate procedure under 21 U.S.C. § 851.

2b.   Appellate counsel was potentially ineffective for failing to raise the § 851 procedural issue on appeal.

Am. § 2255 Mot. at 2 (Claims 1–2(b)).

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  Villegas must show both (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

## A.  Section 851 Procedure

The Court need not consider the allegations concerning the § 851 procedure. Even if counsel had succeeded in dismissing the § 851 Information before sentencing, Villegas's guideline range would still be 360 months to life.  Villegas cannot meet the prejudice prong of the *Strickland* test.

## B.  Choice Between Pleading Guilty and Going to Trial

The choice between pleading guilty or standing trial belongs exclusively to the defendant.  In many ways, a lawyer's mistaken advice about the likely penalty range a defendant faces can distort that decision.  But if there is no reasonable

6

probability that correct advice would have swayed the defendant to make a different choice or would have led to a lower sentence, he cannot show prejudice under the *Strickland* test.

For the sake of argument, the Court will assume that Villegas did not know he was vulnerable to the filing of an Information that would elevate his mandatory minimum to 20 years, and he did not know how high the advisory guideline range was likely to be.

The United States proposed a plea agreement that did not require Villegas to cooperate and did not promise a particular sentence. *See* Prop. Plea Agreement (Docs. 663-1, 693-8). The United States offered to dismiss Count 2, recommend a three-point reduction for acceptance of responsibility, and seek a two-level downward variance in anticipation of the "drugs minus two" reduction that would go in to effect on November 1, 2014. *See id.* at 3 ¶ 3, 6–7 ¶¶ 6–7. Villegas said in his deposition, on August 11, 2021, that he had never seen the proposed agreement before.[4] *See* Villegas Dep. (Doc. 693-4) at 1, 96:19–22. But he was aware that the United States proposed a "very, very, very good deal" before Villegas filed his suppression motion on October 17, 2014. *See id.* at 15:14–16:7, 99:11–13; Def. Mot. to Suppress (Doc. 249).

---

[4] The proposed agreement was attached to habeas counsel's brief in support of the amended § 2255 motion (Doc. 663-1), and Villegas said he reviewed that. Villegas Dep. at 5:22–25.

Two factors were the principal drivers of the guideline range. First was the total quantity of drugs attributable to Villegas. Debriefing co-defendants added information not captured in wiretaps or surveillance and attributed a very conservative total of at least four and a half pounds of methamphetamine to Villegas. *See* Presentence Report ¶¶ 34, 38, 73. The second factor was the purity of the drugs.[5] *See* U.S.S.G. § 2D1.1(c) & Notes (B), (C) (Nov. 1, 2014).

Villegas's deposition shows that his first attorney, Daniel Ball, made him aware of both of these factors. Villegas described a conversation with Ball at the courthouse during a hearing. *See* Villegas Dep. at 9:17–10:4. The last hearing he attended with Ball as counsel was the suppression hearing, held on December 12, 2014. *See* Minutes (Doc. 297). Villegas said:

> [Ball] pulled me out and he said—he said, Mario, I have good news. The lab report came back. And I quote, he said, The drugs have a lot of baking soda in it, which he was meaning mixture. And he said, And therefore—he said something about the indictment was like—like the indictment was way different on the scale of the drugs, the weight, then after, you know.
> And he said, So you're right here on the guideline with this weight, and it's a mixture. And you're somewhere briefly around—now, I don't know the exact number on this, but I do remember that it was something like 11 through 13 years or 13 through 14 and a half years, something like that.

Villegas Dep. at 10:5–19.

At least by mid-December 2014, Villegas understood that both drug quantity

---

[5] "Bad" methamphetamine did not contribute to the total. *See* Presentence Report ¶ 33.

and drug purity would play a role in the guideline calculation.  He also understood that both factors depended on what the evidence showed.

The next hearing Villegas attended at the courthouse was his trial, when Sands represented him.  He said that Sands told him, "Your max is 15 years; no matter what you are getting 15 years."  Villegas Dep. at 33:18–34:18.[6]  When the draft presentence report was made available, Sands was "surprised" at the guideline range and "kind of flipping out about it."  *Id.* at 35:7, 35:18–19.  He said, "I don't know how this happened, Mario.  I'm so sorry, you know.  This is—I don't see how they are doing this."  *Id.* at 35:13–16.

On Villegas's account, both lawyers gave him bad advice.  The laboratory reports admitted into evidence at trial actually showed a high level of purity.  *See, e.g.*, Presentence Report ¶¶ 75–77.  And at no point in the case did Villegas face a "maximum" sentence of 15 years.  But attorneys' mistakes do not entitle a defendant to the benefit of their mistakes.  That is, even if Villegas had video evidence showing both lawyers pointing to the wrong statute and swearing under oath that his maximum penalty was five years, it was not five years.  It was life.

Under the circumstances of this case, both lawyers' allegedly erroneous advice proves that Villegas received the benefit of the risk/reward assessment he

---

[6] Villegas claims the "maximum" somehow could have stretched to 17 and a half years.  *See* Villegas Dep. at 23:13–24:18. It is not necessary to figure out how.

made. At a time when he believed the total guideline calculation was significantly lower than it actually proved to be, Villegas chose to reject a plea offer. The lower in the guidelines he thought he would be, the more likely it is that a three-level reduction for acceptance of responsibility would reduce the advisory range. By his own account, Villegas chose to proceed to trial even under circumstances that were quite favorable for obtaining a lesser sentence by pleading guilty without cooperating. If he turned down a plea offer when he had (false) reason to believe it could reduce his guideline range, there is no reason to suppose he would have pled guilty had he known a guilty plea would *not* reduce his guideline range.

And, in fact, a guilty plea would have had no effect on the guideline range. The drug quantity would have depended on the same co-defendants' statements. The drug purity would have been decided by the same laboratory reports. The same enhancements would have applied. Villegas's criminal history would have been the same. Villegas has not identified any fact or factor that would have been materially different had he pled guilty rather than going to trial.

A guilty plea would have reduced the offense level of 42 by three levels. But a total offense level of 39 and a criminal history category of VI still corresponds to an advisory guideline range of 360 months to life in prison. *See* U.S.S.G. ch. 5 Part A (Sentencing Table). Had Villegas accepted a plea offer, he might have a slightly stronger claim of ineffective assistance, because he would

10

have given up whatever chance he had at being acquitted at trial without obtaining

a perceivable benefit at sentencing.  As the case actually proceeded, Villegas

preserved whatever chance he had at acquittal without suffering any prejudice from

the lack of a three-level downward adjustment for acceptance of responsibility.

Finally, there is no reason to believe a guilty plea would have persuaded the

Court to vary downward from the advisory guideline range.  There is no principled

rationale for giving a defendant "extra credit" for pleading guilty solely because he

needs a big break to reach a guideline range less than 360 months to life in prison.

At sentencing, the Court found a 360-month sentence was appropriate in view of

all the factors in 18 U.S.C. § 3553(a).  *See* Statement of Reasons (Doc. 586) at 4 §

VIII.  Neither the facts the Court considered nor their weight would change if

Villegas's offense level had been 39 instead of 42.

## C. Conclusion

Even if Villegas proved that his lawyers gave him bad advice, and even if he

proved he would have accepted the plea agreement after his suppression motion

was denied, *see* Villegas Dep. at 16:1–3; Orders (Docs. 294, 328), no factor

important to his sentence would change.  He would remain in an advisory

guideline range of 360 months to life.  The Court would still find a sentence at the

low end of the guideline range "sufficient, but not greater than necessary," 18

U.S.C. § 3553(a), to fulfill the objectives of federal sentencing.  An evidentiary

hearing is not necessary, because the Court assumes Villegas's account of the facts is correct. His claims simply lack merit.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Villegas's claims do not meet the relatively low threshold required for a COA. Even assuming that both of his attorneys gave him bad advice, Villegas suffered no prejudice as a result of their performances. He has not identified any reason to suppose his advisory guideline range might have been less than 360 months to life in prison. There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. The United States' motion for leave to file an overlength brief (Doc. 691)

is GRANTED.

    2. Villegas's motion for an evidentiary hearing (Doc. 689) is DENIED.

    3. The United States' motion for summary judgment (Doc. 692) is GRANTED.

    4. Villegas's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 662) is DENIED.

    5. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Villegas files a Notice of Appeal.

    6. The clerk shall ensure that all pending motions in this case and in CV 18-130-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Villegas.

    DATED this __8th__ day of June, 2022.

Susan P. Watters
United States District Court

13